BROWN, Chief Judge.
IjThe Wagoner family bought a 193-acre tract in the Lake St. John Oil Field in Concordia Parish in September 2004. After the purchase, they discovered that the property had been contaminated and damaged by oil and gas operations. The trial court denied the Wagoners the right to sue the past operators who were responsible for the contamination and damage. The trial court held that this tort/contract action was a personal right and that the owner of real property who sells it after damage has occurred, but without assigning the right to the damages, is the proper person to sue for the damages. The Wagoners have appealed this ruling and other rulings on other exceptions granted by the trial court. We reverse in part and remand.

Facts and Procedure

This action involves a claim for damages to a 193-acre tract of land located in the Lake St. John Oil and Gas Field in Con-cordia Parish, Louisiana. Plaintiffs[1] filed suit claiming that their property was contaminated by the oil and gas exploration and production activities of defendants.[2]
Operations on the property were begun in 1945 by Chevron pursuant to three mineral leases obtained from the Pasternack family. In June 1999, the Pasternack family sold the property, reserving their mineral interests, in a cash sale to James and Jane Funderburg and David and Dale Steckler. 12One month later, the Stecklers sold their interest in the property to the Funderburgs. In 2004, plaintiffs purchased the property from the Funder-burgs. None of the transfers of surface interests in plaintiffs’ chain of title included a specific assignment of the right to sue for property damages. After their purchase, plaintiffs discovered that the subsurface of their property was contaminated with exploration and production waste, in particular, through the use of unlined pits.
From 1945 to 1992, Chevron leased and conducted oil and gas operations on the property now owned by plaintiffs. From 1992 through 2002, Pennzoil (now Devon) conducted operations on the property pursuant to a lease assignment from Chevron. From 2002 to 2004, Merit conducted operations on the property pursuant to a lease assignment from Pennzoil. LSJ and Oil & Ale obtained a lease assignment from Merit in 2002 and contracted with Smith to operate on the property from January *17 through August 2004. Beginning in 2004, McGowan (formerly a defendant, dismissed without prejudice) leased and operated the shallow oil producing horizons beneath the property. The deeper horizons were leased and operated by Denbury after 2004. The original mineral leases obtained in 1939 and 1940 by Chevron remain active today.
Numerous exceptions were filed by the various defendants, and following a hearing on the exceptions, the trial court dismissed all of plaintiffs’ claims against Chevron (the original mineral lessee), and Merit and Devon (two of Chevron’s assignees). The other defendants, Denbury, LSJ, Oil & Ale, Smith and McGowan, conducted operations on the property Rafter plaintiffs’ purchase, and not all of plaintiffs’ claims were dismissed. The trial court sustained the following exceptions filed or adopted by reference by all defendants: (a) No Right of Action (as to Chevron, Merit and Devon); (b) Vagueness; (c) No Cause of Action for Strict Liability for Nuisance; (d) No Cause of Action for Strict Liability for Garde or Custody; (e) No Cause of Action for Abnormally Dangerous or Ultrahazardous Activity; (f) No Cause of Action for Breach of Contract or Warranty; (g) No Cause of Action for Punitive Damages; (h) No Cause of Action for Civil Fruits; and (i) No Cause of Action for Unjust Enrichment.
It is from this judgment that plaintiffs have appealed.

Discussion

The function of a no right of action exception is to determine whether plaintiffs belong to the class of persons to whom the law grants the cause of action asserted. Badeaux v. Southwest Computer Bureau, Inc., 05-0612 (La.03/17/06), 929 So.2d 1211; Skannal v. Bamburg, 44,820 (La.App.2d Cir.01/27/10), 33 So.3d 227, writ denied, 10-0707 (La.05/28/10), 36 So.3d 254; Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 09-0298 (La.App. 4th Cir.02/10/10), 47 So.3d 428, reh’g granted, (04/21/10). Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681; Skannal, supra.
The function of the peremptory exception of no cause' of action is to question whether the law extends a remedy against the defendants to anyone under the factual allegations of the petition. Industrial Companies, Inc. v. Durbin, 02-665 (La.01/28/03), 837 So.2d 1207; Cleco Corp. v. Johnson, 01-0175 (La.09/18/01), 795 So.2d 302.
Both the peremptory exceptions of no right and no cause of action present questions of law requiring a de novo review by appellate courts. La. C.C.P. art. 927; Skannal, supra; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App.2d Cir.10/07/09), 22 So.3d 246, writ denied, 09-2420 (La.02/05/10), 27 So.3d 299.

No Right of Action As to Chevron, Merit & Devon

The majority of plaintiffs’ assignments of error are related to the trial court’s no right of action ruling as to Chevron, Merit & Devon. Defendants have likewise devoted the majority of their arguments on appeal to this ruling.
The oil leases covering the property date back to the 1940’s and remain in effect today due to production. All mineral rights were retained by the family of the original lessor (Pasternack) in the deed of sale to the Funderburgs. The 2004 deed of sale to plaintiffs from the Funderburgs does not include a specific assignment of the right to sue for property damages that may have occurred prior to their acquisition of the property.
Chevron’s position, and that of the trial court, is that the owner of the land at the *18 time of the alleged damages to the property is the person with the real and actual interest to assert a claim for damages to the land. They argue that the right to assert a claim for property damages is a personal right and is not transferred to new owners merely by the transfer of title to the land. La. C.C. art. 1764. In support they rely on the Third Circuit case of Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 06-1557 (La.App. 3d Cir.11/28/07), 981 So.2d 23, writ denied, 08-0298 (La.04/04/08), 978 So.2d 327.
The Third Circuit in Lejeune Bros., Inc., supra at 32, held that a claim for damages, whether it arises under a predial lease or a mineral lease, is a personal right which must be specifically assigned to run with the property. Therefore,. plaintiffs, who did not acquire by specific assignment any rights to pre-acquisition property damages, have no claim for property damages that may have occurred prior to their purchase of the land in question.
However, the First Circuit differed with the Third Circuit in Marin v. Exxon Mobile Corporation, 08-1724, 2009 WL 7004332 (La.App. 1st Cir. 09/30/09) (not designated for publication), writs granted, 09-2368 and 2371, (La.02/26/10), 28 So.2d 262. In Marin, Exxon challenged the trial court’s denial of its peremptory exception of no right of action. Exxon claimed that plaintiffs had no right, whether based in tort or contract, to sue for pre-acquisition damages. The First Circuit affirmed the trial court stating:
With respect to the pre-acquisition contract claims, Exxon asserts that to have any right of action to enforce any express or implied obligation in a mineral lease, the Breauxs were required to prove that they were a party to the mineral lease or were specifically assigned the right by the lessor. Breaux admitted that he purchased only the surface rights and was not specifically assigned any interest in the mineral rights that are the subject of the lease. Exxon relies on the Third Circuit opinion in Lejeune Brothers, Inc., 981 So.2d at 32, for its proposition that tort and/or contract claims for damages to real property arising from oil and gas operations conducted under a mineral lease constitute a personal right that does not run with the property. As such, a party who purchased property from a mineral rights lessor cannot recover from the lessee for property damage that was inflicted prior to the property purchase.
]_¿The Breauxs contend that Exxon’s argument ignores the Supreme Court decision in Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475 (La.1991). In that case, plaintiff purchased contaminated property that was burdened with a mineral lease. The seller reserved all mineral rights in the act of sale. After the purchase, Magnolia sued the successor and assignee of the mineral lease seeking remediation of the contamination. Even though most of the damage resulted from a blowout on the property seventeen years before Magnolia purchased it, the Supreme Court held that Magnolia had a right to restoration. The Supreme Court specifically held “Magnolia’s right to recover damages is a property right arising out of the original lease and attached to the property.” Magnolia Coal Terminal, 576 So.2d at 483.
In the instant case, the Breauxs contend that the CBT lease was still in effect at the time they purchased the property. Alternatively, they argue Exxon came forward with no proof at the hearing that the lease was not still active. The Breauxs distinguish Lejeune Brothers on the basis that the mineral lease had expired in Lejeune Brothers prior to the *19 plaintiffs purchase of the property. Indeed, the lease at issue in Lejeune Brothers had terminated over two years prior to Lejeune Brother’s acquisition of the property. Lejeune Brothers, 981 So.2d at 28. As such, the Third Circuit held it was impossible to transfer rights to an assignee under an expired mineral lease. Lejeune Brothers, 981 So.2d at 28. Moreover, we agree with the Breauxs’ assertion that Lejeune Brothers does not attempt to explain or distinguish Magnolia, which is controlling Louisiana Supreme Court precedent.
Thus, applying these precepts to the record before us, we are unable to find that the trial court committed factual or legal error in denying Exxon’s exception of no right of action and, thus, maintaining the claims of the Breauxs.
We agree that the Third Circuit in Le-jeune did not explain or distinguish Magnolia Coal Terminal, supra, and concur in the First Circuit’s conclusion that Magnolia Coal Terminal correctly recognized that the right to restoration of damaged property is a real right and as such, attaches to the property.
l7The Supreme Court in Magnolia Coal, supra, citing Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (La.1969), found that the plaintiff was a third party beneficiary with a right to recover pre-acquisition restoration damages under a damage provision of the mineral lease.
The Mineral Code places the lessee under an obligation to act as a prudent operator as to both surface and subsurface. An assignment does not relieve the lessee (Chevron) of its obligation “under the mineral lease.” La. R.S. 31:129. A mineral lease is a real right and burden on the immovable. The present landowner, who has no mineral interest, may not prohibit the lessee or its assigns access to the land. The surface owners are subject to the real obligation of the leasehold owners’ surface rights. The leasehold owners, including Chevron, Merit and Devon, have a continuing and correlative responsibility as to the surface owner. La. C.C. art. 1763 states that “[A] real obligation is a duty correlative and incidental to a real right.”
We thus reverse the trial court’s ruling in favor of Chevron, Merit and Devon granting their no right of action exception. Plaintiffs have no cause of action against defendants for civil fruits or storage.
Plaintiffs argue that they have a cause of action for civil fruits or storage because defendants, as trespassers and therefore bad faith possessors, have derived an economic benefit from their storage of hazardous waste on plaintiffs’ land without permission. According to plaintiffs, the economic benefit of this storage is equal to the cost that defendants would have incurred had their waste been properly disposed | sof/stored elsewhere. Plaintiffs urge that the economic benefit reaped by defendants qualifies as a civil fruit under La. C.C. art. 551.
La. C.C. art. 486 provides in part that a possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses. La. C.C. art. 551 defines fruits as things that are produced by or derived from another thing without diminution of its substance. Article 551 further specifies that civil fruits are revenues derived from another thing, such as rentals, interest, and certain corporate distributions.
The “savings” or economic benefit realized by defendants in disposing of/storing their waste or byproducts on the property rather than disposing ofistoring them off-site does not qualify as a “fruit” much less as a “civil fruit.” Nothing was produced *20 by or derived from the property as a result of the storage/disposal of oilfield waste, and there were no revenues, such as rentals, interest or a corporate distribution, derived from the property by virtue of the storage/disposal of oilfield waste. Furthermore, plaintiffs do not have a cause of action for compensation for the storage of defendants’ waste on their property. This exception of no cause of action in favor of all defendants was properly sustained by the trial court.

Plaintiffs have no cause of action against defendants for punitive/exemplary damages.

Plaintiffs assert that the trial court erred in sustaining defendants’ exception of no cause of action for punitive damages. As pointed out by defendants, the court minutes, as well as the trial court’s written reasons for judgment, clearly indicate that plaintiffs, in open court, explicitly waived 19their claims for punitive/exemplary damages. There is no merit to this assignment of error.

Conclusion

For the reasons set forth above, the trial court’s judgment is reversed as to the exception of no right of action filed by Chevron, Merit & Devon, and affirmed in all other respects and remanded. Costs are assessed to defendants, Chevron, Merit & Devon.
REVERSED IN PART, AFFIRMED IN PART, and REMANDED.

. Larry Wagoner, Jean Wagoner, Russell G. Wagoner, Angela C. Wagoner, Roy Wagoner, and Ivie Wagoner.

. Chevron U.S.A. Inc., Devon Energy Production Company L.P., McGowan Working Partners, Inc., Merit Energy Company, LLC, Merit Management Partners I, L.P., Merit Energy Partners III, L.P., Merit Energy Partners D-III, L.P., Smith Operating & Management Co., Spokane Oil & Gas, LLC, Sunset Oil & Gas, L.L.C., Denbury Onshore LLC, Diamond South Operating, L.L.C., LSJ Exploration, L.L.C., and Oil & Ale LSJ, L.L.C.