CARAWAY, J.,
concurring.
Iil respectfully concur with the majority ruling as I am not in agreement with both the procedural and substantive analyses given.
In this case, as in the supreme court’s important ruling in Marin v. Exxon Mobil Corp., 09-2368, 09-2371 (La.10/19/10), 48 So.3d 234, the alleged damage is the existing contamination of the soil and groundwater which impedes or prevents plaintiffs’ present use of the land. Plaintiffs’ ownership of the immovable is subject to two real right encumbrances or incorporeal im-movables — a mineral lease and a mineral servitude. La. R.S. 31:18. As discussed further below, the real obligations of these two mineral rights impose upon their owners the same “restoration duty” to the owner of the servient estate recognized and discussed in Marin. Marin, supra at 255. The coextensiveness of these Mineral Code obligations for the same restoration debt to the surface owner makes solidary obligors of the parties sued in Suit # 1, including the Butts, justifying the plaintiffs’ right for the cumulation of their claims into one action. Narcise v. Illinois Central Gulf Railroad Co., 427 So.2d 1192 (La.1983); La. C.C. art. 1794; La. C.C.P. art. 463. The trial court’s denial of plaintiffs’ right of joinder under La. C.C.P. art. 463 of these defendants in Suit # 1 at this early stage of the proceedings was therefore an abuse of discretion.
*624 The particular title history for this property shows that the initial mineral right was the 1941 oil and gas lease which was granted by the landowner. The second mineral right was created years later when the mineral ownership in the form of the servitude was severed from the |2ownership of the land. Significantly, both the mineral lease and the mineral servitude burden plaintiffs’ land with an identical right of use as shown by the Mineral Code definitions for each mineral right under Articles 114 and 21. La. R.S. 31:114 and 21. That burden is the right of use to explore for and produce minerals. Id. The mineral servitude owner’s right to explore for and produce minerals was subject to the mineral lease which was already in existence as a real right when the servitude was created.
The present burden upon the plaintiffs’ land in favor of the owners of the two mineral rights, however, does not overwhelm plaintiffs’ concurrent right to other uses of the land. There is a balance and relationship of the rights of use between the servient estate and the two mineral estates. Unlike a predial lease which may deliver complete possession and use of the immovable to the lessee, the lessor of the mineral lease or the landowner/seller of a mineral servitude retains possession and use of the surface subject only to the use right to explore for and produce minerals, usually on a small portion of the land or even off the land altogether by unit operations. The servient estate owner under this regime expects continued use of his land. The Mineral Code recognizes this in Article 11(A) which provides for the parties’ correlative rights, as follows:
A. The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. Similarly the owners of separate mineral rights in the same land must exercise their respective rights with reasonable regard for the rights of other owners.
LLa. R.S. 31:11.[6]
There aré two matters underlying the defensive positions of the Butts and the present leasehold owner, McGowan.[7] First, the physical acts causing the alleged contamination appear to have occurred long before the Butts and McGowan acquired ownership of their respective mineral rights. Second, the Butts insist that since any right of use they own over the property is leased to McGowan, they have no existing possessory right of the immovable, enabling their performance of restoration of the land. From the Supreme Court’s ruling in Marin, the special legislative remedy for restoration under La. R.S. 30:29, and the correlative rights re *625 gime of the Mineral Code addressed in Articles 11, 22, and 122, these matters raised by Butts and McGowan do not negate the existence of plaintiffs’ causes of action alleged against them in Suit # 1. The clear “community of interest” of those causes of action to restore present use of the servient estate to the plaintiffs requires joinder of the parties in Suit # 1. La. C.C.P. art. 463.
The important distinction for answer to the defendants’ contentions involves the difference between (1) a tort claim for property damage remedied by money damages, and (2) a claim to enforce- the real obligations |4of Mineral Code Articles 11, 22, and 122 by the owner of the servient estate. A breach of an obligation in tort results in an obligation to pay, while the breach of the real obligation may be remedied by a performance obligation or the special regulatory cleanup of La. R.S. 80:29 to cease the unauthorized misuse of the property or to restore the land to normal use by removal of contamination. Since plaintiffs’ causes of action against the Butts and McGowan fall under this second category of action, the time of the actual damaging conduct by other parties which caused the contamination is not crucial. Instead, the existing impediment to the servient landowner’s use requires the present owners of the mineral rights to act to restore that use.
In Marin, because all the acts of contamination by the use of unlined pits had ceased many years before, the court rejected the tort claims of the landowners. The delictual actions were prescribed; plaintiffs’ contra non valentem claims and the continuing tort doctrine were rejected. Turning to the additional argument of the Marin plaintiffs, the court summarized the parties’ conflicting positions, as follows:
Plaintiffs argue that as a lessee, Exxon has continuing obligations under both the mineral and surface lease that cannot prescribe as a matter of law. Exxon argues that any restoration obligations it may have under these leases do not go into effect until the lease is terminated, making any such claims premature. The plaintiffs’ position is correct.
The Marin property involved both a predial lease, with its personal obligations, and a mineral lease, a real right, with its real obligations. Hoover Tree Farm, L.L.C. v. Goodrich Petroleum, L.L.C., 46,-153 (La.App.2d Cir.3/23/11), 63 So.3d 159, 166, unit denied, 11-1225 (La.9/23/11), 69 So.3d 1161, writ denied, 11-1236 (La.9/23/11), 69 So.3d 1162; La. C.C. art. 1763. The court determined that Article 122 of the Mineral Code, a real obligation of Exxon, was breached rejecting Exxon’s argument that its duty to restore could only materialize at the expiration of the mineral lease. While certain intended and ongoing use of the property to explore for and produce minerals may require restoration only upon termination of the lease, Exxon’s unauthorized misuse of the property amounted to actions taken without reasonable regard to the plaintiffs’ surface rights, allowing for immediate remediation. The court found that the reasonable prudent operator obligation of Article 122 was breached. The unreasonableness of the existing contamination also was a violation of the correlative rights principle of Article 11.
In Marin, the plaintiffs’ contracts for a predial lease and the mineral lease were directly with Exxon and privity of contract therefore existed between the Marin family and the company. The court was not required to discuss the effect of the real obligations of a mineral lease between the owner of the land and the owner of an incorporeal immovable who were never in privity of contract. In this case, the Butts acquired their mineral servitude from a *626 former owner and not the plaintiffs. Likewise, the 1941 mineral lease was not a contract between McGowan and the plaintiffs. Nevertheless, even in the absence of privity of contract, the parties’ present ownership of the immovable binds them as dominant and servient estate owners to real obligations.
| (¡In Petchak v. Bossier Parish Police Jury, 45,705 (La.App.2d Cir.11/24/10), 55 So.3d 840, 852, writ denied, 11-0165 (La.4/29/11), 62 So.3d 112, this court addressed the unauthorized misuse of the defendant’s personal right of use servitude for water drainage in a residential subdivision. We stated:
Plaintiffs’ lot is therefore a servient estate that owes a charge for the benefit of the drainage of the subdivision. La. C.C. art. 646. Plaintiffs’ obligation to allow the passage of the water across their property is not a personal obligation but a real obligation because it is a charge on the servient estate that all successive owners of Lot 363 must bear. La. C.C. arts. 1763 and 1764 (footnote omitted). As a correlative real obligation governing the dismemberment of the usus right of ownership of the immovable, (footnote omitted) the owner of the dominant estate, or in this case the owner of the personal servitude, must exercise his “specified use” without exceeding the boundaries of that use in a manner damaging the concomitant use of the servient estate. See former Article 778 of 1870 Civil Code. “The owner of the dominant estate may not make use of the servitude that aggravates the condition of the servient estate.” A.N. Yiannopoulos, Predial Servitudes § 156, 4 Louisiana Civil Law Treatise (3d ed.2010).
This same correlative rights regime for personal and predial servitudes is embodied in Article 11 of the Mineral Code for the mineral rights now at issue. The plaintiffs’ causes of action against the Butts and McGowan exist from the allegations of Suit # 1 because they are landowners, in the language of Article 11, “burdened by ... mineral ... rights.” The existing misuse of the defendants’ “right to explore for and produce minerals” regardless of any prior owners’ involvement makes the present owners of the mineral rights legally responsible for remediation to restore the concurrent use of the land to the owners of the servient estate.
The conclusion that the Butts and McGowan have coextensive obligations under Article 11 generally and more specifically under Articles |722 and 122 of the Mineral Code, makes them solidary obli-gors for the “whole performance” of a singular duty to restore present use of the servient estate. La. C.C. 1794. The special regulatory cleanup for the so-called legacy suits applies as a remedy against not only the “parties who caused the damage” but also to those “who are otherwise legally responsible therefor.” La. R.S. 30:29(0(1).
As between the obligors for the restoration, however, McGowan’s obligation under Article 122 as a reasonably prudent operator is also owed to the Butts, as mineral servitude owners. Therefore, the Butts as solidary obligors of plaintiffs will have a right of indemnification from McGowan. Such indemnification right is more than enough to answer the Butts’ contentions regarding their lack of possessory rights to the land.

. Part B of La. R.S. 31:11 was enacted and added to the Mineral Code in 2006. It therefore did not apply to the mineral reservation in the sale of this land which created the Butts mineral servitude. Notably, however, in adding this provision for the creation of mineral servitudes through such reservations, the Legislature recognized the link between Articles 11 and 22 of the Mineral Code limiting the use of the mineral servitude to "only so much of the land, including the surface, as is reasonably necessary to conduct ... operations.”

. Because of this court’s ruling in Wagoner v. Chevron USA Inc., 45,507 (La.App. 2d Cir. 8/18/10), 55 So.3d 12, I will limit my consideration to the plaintiffs' cause of action in Suit # 1 against McGowan. McGowan was also the present owner of the disputed oil and gas lease in Wagoner. Yet, this court’s ruling only addressed and dismissed claims by the surface owners against the former leasehold owners in Wagoner. The argument for imposing the real obligations of the mineral lease against the former leasehold owners pursuant to La. R.S. 31:129 was made in Chief Judge Brown's dissent in Wagoner.