CARAWAY, J.
Iiln this dispute between a church pastor and the Board of Trustees, the trial court ultimately validated the election of two trustees to the Board and enjoined the pastor from acting for certain church matters. The pastor has appealed. We affirm the trial court’s ruling.

Facts

On November 21, 2011, a group of four members of the Board of Trustees (“Board”) of the Baptist Temple Baptist Church of Shreveport LA, including Robert Thornton and Lorenza Williams, met to consider the continued employment of the Pastor, Rev. Alvin Carthon, Sr. The four trustees unanimously voted to recommend to the full congregation the termination of the pastor.
During the November 20, 2011 church service, Thornton instructed the church secretary, Jackie Brown, to make an announcement about the planned church meeting. Brown followed the instructions and attempted to make the announcement. When she did so, however, Rev. Carthon stopped her on the grounds that church meetings could not be had without approval of the pastor. At that time, Williams interrupted the service from the back of the sanctuary to announce that there would be a church meeting. Rev. Carthon then instructed the congregation to pray. Allegedly, Williams and Thornton continued their disruption with other church members outside of the sanctuary. After the service, Rev. Carthon verbally reprimanded both men for their actions.
1 ?The following Sunday, November 27, 2011, Williams again attempted to announce a church meeting before the devotional service in which the full membership was in attendance. Rev. Carthon was in his study when he was informed of Williams’ actions in which Thornton was also involved.
On November 30, 2011, Rev. Carthon sent certified letters to both men officially suspending them from “all offices and *557 duties and responsibilities at the Baptist Temple Church.”[1] Rev. Carthon admitted that the word membership was not included in the letters. He also testified that both Trustees “paid some money” to the church even after their suspensions so that their church membership remained intact.
On December 15, 2001, Thornton and Williams (“Plaintiffs”), individually, and on behalf of the Board, filed a Petition for Writ of Quo Warranto seeking the appointment of a special master to oversee the voting of the congregation. They also sought a temporary restraining order and permanent injunction to prevent Rev. Car-thon from entering the church or dispensing funds from the church account. The petition requested a Writ of Quo Warranto directing Rev. Carthon to show by what authority he claimed the right to conduct church business. By order dated December 15, 2011, the court denied the temporary restraining order.
On January 4, 2012, Rev. Carthon filed Peremptory Exceptions of No Cause and/or Right of Action urging that the petition failed to state a cause of action in Quo Warranto due to the lack of allegations that his selection as |3pastor was improper or that his actions were -without pastoral authority. He contended that the courts should not interfere with ecclesiastical issues. Rev. Carthon also argued that the action should be dismissed for no right of action because Plaintiffs had no authority under the church Bylaws to call meetings of either the Board or the congregation and otherwise failed to follow the requirements of the church Articles of Incorporation.
The trial court conducted several pretrial hearings and issued numerous orders prior to the final trial of these matters. At a preliminary hearing on Rev. Carthon’s exceptions, it was established that the church did not have the requisite number of trustees on the Board to conduct business. Thus, the court deferred ruling on the exceptions and instead rendered judgment on February 24, 2012, directing that a membership meeting of the church be held to conduct an election for three vacancies on the Board to provide for nine church members as trustees. The judgment directed that a membership roll be prepared, the date for the meeting be set, and an independent clergyman conduct the meeting. The judgment instructed each “side” to provide a list of three candidates from the membership to be elected for a total of six members to be included on the ballot. No appeal of this judgment occurred.
On March 24, 2012, the court-ordered election of trustees was held. Williams, Thornton and David Holden were elected.
This election prompted Rev. Carthon to file in the same pending action a Petition for Declaratory Judgment and Injunctive relief on April 16, 2012, against the three newly-elected Board members, seeking to invalidate | ¿the election due to the vote of alleged ineligible members and Plaintiffs’ ineligibility to run for trustee positions based upon their November 2011 suspensions. On the same day, Rev. Carthon filed a Motion to Re-Urge his previously filed exceptions of No Right/Cause of action.
The Court ultimately set all remaining matters for hearing for May 17, 2012. Nevertheless, a membership meeting terminated Rev. Carthon from his position on April 29, 2012. This prompted Rev. Car-thon to seek further injunctive relief. The court granted a preliminary injunction and set the hearing on the permanent injunction for May 17, 2012. On May 4, 2012, *558 Rev. Carthon sent second letters to Plaintiffs again notifying them of their suspension from all offices, duties and responsibilities due to their April 29th actions.
Full copies of the subject church Bylaws and Articles of Incorporation are not included in the record before us. The parts provided are incomplete, undated or in some instances, untimely filed. It is only from the transcript of the witnesses’ testimony that most of the relevant provisions can be gleaned. As they relate to the issues raised on appeal, the following articles provide the crucial authority for the parties’ actions and the Court’s ruling:
1) Article IV of the Amended Articles of Incorporation provides that membership of the Board of Trustees is limited to ten members, including the pastor who serves as ex officio of all boards.[2]
|s2) Article VI of the Amended Articles of Incorporation of September 15, 2006, reads as follows:
Meetings of the Board of Trustees members may be called at any time by either the Pastor or the Team Leader of the Board of Trustees. On the failure or refusal of either to call a meeting, upon the written request of at least five members of the Board of Trustees, any one of these five members shall have the authority to call a meeting, provided that notice by United States Mail shall be given to each member at least ten days prior to the date named for any meeting called and this requirement of notice shall apply to either regular or special meetings, except that it may be waived in writing by each member present at said meeting.
No business transacted at a Board of Trustees members’ meeting shall be valid unless a quorum is present. A quorum shall consist of at least seven of the membership present in person.
All meetings shall be held at Baptist Temple Baptist Church, Caddo Parish, Louisiana.
3) Article IX of the Amended Articles of Incorporation provides:
Notice of Meetings to Members. The Team Leader of the Board of Trustees, or the Team Leader of the Board of Deacons, or the Pastor shall provide notice to members of the corporation the date, time, and location of any Special or Annual Meeting by announcement at the regularly scheduled Sunday morning service on the two consecutive Sundays prior to the meeting. Notice must also be published in the church bulletin at least once, and at least seven days prior to the meeting.
Any and all provisions at law or otherwise contained in the Articles of Incorporation requiring any other delays or other forms of notice, particularly as found in LSA-R.S. 12:230 are herein dispensed with.
4) Article 3 of the church Bylaws[3] defines the rules and regulations related to membership as follows:
All members shall be ruled and governed by the laws of this, the Baptist Temple Baptist Church, to love, honor, respect and admonish |fione another, and to follow the leadership given by the Pastor. Any member who refuses to follow the leadership shall not be in line to lead anything. The same shall be dealt with accordingly.
*559 All members shall work together without divisions.
A member in good standing (active member) is one who contributes cheerfully and regularly tó the expenses of the church within a 90-day period of time, talent and money. One who does not adhere to the above shall be considered a member not in good standing, inactive member. An inactive member shall not have voting privileges. All active members age 16 and above will be permitted to vote. The above includes members who are sick and shut in.
In order for charges to be brought against a member the same applies as for a pastor and deacon board. Three quarters of the deacon board must agree before bringing to the membership.
At the May 17, 2012 hearing, the court heard arguments and testimony relating to the opposing petitions and pleadings filed by the parties. On May 22, 2012, the trial court made the following findings of facts as they relate to the March 24 election of the Board and the issues before us:
1) In November 2011, Rev. Carthon never suspended or attempted to take any action against Mr. Thornton and Mr. Williams which adversely [a]ffected their membership status. Therefore, Mr. Thornton and Mr. Williams were both members in good standing (active members) to meet the eligibility requirement for nomination and election to the Board of Trustees.
[[Image here]]
4) Pursuant to the Church’s Bylaws, Mr. Thornton and Mr. Williams were both members in good standing (active members) to meet the financial eligibility requirement for nomination and election to the Board of Trustees.
[[Image here]]
7) The results of the March 24, 2012, Church election for the Board of Trustees were accepted by this Court.
The court further determined that:
Based upon the totality of the circumstances by a preponderance of the evidence, this Court opined and determined that the newly elected members of the Board of Trustees and the Church membership as a |7whole would be better served if Rev. Carthon did not participate in a functional role in Church activities at this time and/or until further actions by the Church membership.
From these findings, the court rendered judgment which first declared that Rev. Carthon was still the pastor of the church since the April 29 action of the church was premature. Nevertheless, the court granted the writ of quo warranto to the following extent:
a) Defendant, Rev. Alvin L. Carthon, Sr., is enjoined from entering Baptist Temple Baptist Church and/or the premises located at 5024 Greenwood Road, Shreveport, Louisiana, without written request by Rev. Carthon and expressed written approval from this Court; and
b) Defendant, Rev. Alvin L. Carthon, Sr., is enjoined from acting on behalf of Baptist Temple Baptist Church regarding any matters, including, but not limited to, business financial, or religious.
The Judgment denied Rev. Carthon’s exceptions of no cause and no right of action and his requests for declaratory and injunctive relief. The judgment placed David Holden, Robert Thornton and Lor-enza Williams on the Board of Trustees.
This appeal of the May 22, 2012,[4] judgment by Rev. Carthon ensued. On appeal, *560 Rev. Carthon argues that the trial court erred in its rulings on the grounds that his suspension letters removed Plaintiffs’ authority to act to remove him as pastor. Rev. Carthon also argues that the trial court erred in failing to enjoin the Trustees from terminating him without allowing him the opportunity to answer his charges and to be present to preside over the membership- meeting. Finally, Rev. Carthon argues that the trial court erred lain prohibiting him from returning to the church and answer the charges against him.

Discussion

Quo warranto is a writ directing an individual to show by what authority he claims or holds public office or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers. La. C.C.P. art. 3901. When the court finds that a person is holding or claiming office without authority, the judgment shall forbid him to do so. It may declare who is entitled to the office and may direct an election when necessary. La. C.C.P. art. 3902. The writ of quo warranto, although required to be instituted by petition, is an extraordinary remedy which may be but does not necessarily have to be tried summarily. La. C.C.P. arts. 2592, 3781; Clay v. Clay, 389 So.2d 31 (La.1979).
In a quo warranto action, the defendant has the burden of showing by what authority he or she claims to hold office. Menard v. City of New Orleans Enforcement and Hearings Bureau, 12-1161 (La.App. 4th Cir.1/18/13), 108 So.3d 340; Crutcher v. Tufts, 04-0653 (La.App. 4th Cir.2/16/05), 898 So.2d 529.
The proper procedure to contest title to an office in a private corporation is a writ of quo warranto. Canedo v. Vicari, 11-1116 (La.App. 5th Cir.5/8/12), 99 So.3d 64; Yee v. Wond, 08-814 (La.App. 5th Cir.3/24/09), 10 So.3d 791, writ denied, 09-0893 (La.6/5/09), 9 So.3d 873; See, Leidenheimer v. Schutten, 194 La. 598, 194 So. 32 (1940). In quo |9warranto proceedings to oust directors of a corporation, the court may investigate whether or not the votes were legally cast. State ex rel. Moss v. Willis, 192 So. 138 (La.App.Orleans 1939). A church member who claims the board of directors was not elected according to procedure set forth in the church charter has a right to have the claim heard by a civil court. Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980).
Courts of record within their respective jurisdiction may declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of final judgment or decree. La C.C.P. art. 1871; In re Melancon, 05-1702 (La.7/10/06), 935 So.2d 661. Courts are without power to grant declaratory relief unless a justiciable controversy exists. Prator v. Caddo Parish, 04-0794 (La.12/1/04), 888 So.2d 812; Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb v. Roberts, 00-2517 (La.2/21/01), 779 So.2d 726. Trial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief. Louisiana Supreme Court Com *561 mittee on Bar Admissions ex rel. Webb, supra. Courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. Id.
| mExceptions of no cause of action and no right of action are both peremptory exceptions, the function of which is “to have the plaintiffs action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action.” La. C.C.P. art. 923; Wagoner v. Chevron USA Inc., 45,507 (La.App.2d Cir.8/18/10), 55 So.3d 12, writ denied, 10-2773 (La.3/2/12), 83 So.3d 1032; Waggoner v. America First Ins., 42,863 (La.App.2d Cir.1/16/08), 975 So.2d 110. Both exceptions of no right and no cause of action present questions of law requiring a de novo review by appellate courts. La. C.C.P. art. 927; Wagoner, supra; Skannal v. Bamburg, 44,820 (La.App.2d Cir.1/27/10), 33 So.3d 227, writ denied, 10-0707 (La.5/28/10), 36 So.3d 254.
Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681; Wagoner, supra; Skannal, supra. The peremptory exception of no right of action is used to show that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. La. C.C.P. art. 927; Wagoner, supra; Richland Parish Police Jury v. Debnam, 42,421 (La.App.2d Cir.10/17/07), 968 So.2d 294, writ denied, 08-0016 (La.3/24/08), 977 So.2d 953.
The burden of proof of establishing the exception of no right of action is on the exceptor. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748; Wagoner, supra.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual | ¶ allegations of the petition. Kinchen v. Livingston Parish Council, 07-0478 (La.10/16/07), 967 So.2d 1137; Fink v. Bryant, 01-0987 (La.11/28/01), 801 So.2d 346. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Kinchen, supra; Fink, supra.
The Free Exercise Clause of the United States Constitution provides that “Congress shall make no law ... prohibiting the free exercise [of religion.]” The Free Exercise Clause restricts the government’s ability to intrude into ecclesiastical matters or to interfere with a church’s governance of its own affairs. Bollard v. California Province of the Society of Jesus, 196 F.3d 940 (9th Cir.1999) citing, Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952) to explain that the Free Exercise Clause protects the powers of religious organizations to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. A church’s selection of its own clergy is one such core matter of ecclesiastical self-governance with which the state may not constitutionally interfere. Bollard, supra, citing, Serbian Eastern Orthodox Diocese for United States of America and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). A church must retain unfettered freedom in its choice of ministers because ministers represent the church to the people. Bollard, supra.

11gProcedural Matters

All of Rev. Carthon’s four assignments of error relate in some manner to the proper procedure employed in this dispute and the trial court’s recognition of both a *562 cause of action and the right of action by-Thornton and Williams, who purported to act individually and on behalf of the Board. Regarding these procedural assertions, we find two things most significant. First, both sides of the controversy have filed petitions for relief, Plaintiffs’ initial claims in instituting the action and Rev. Carthon’s counterclaims. The common relief sought by all parties centers on church governance. Second, regardless of any prior procedural deficiency, Rev. Carthon did not appeal the trial court’s prior order for the Board of Trustee election of March 24. That judgment is therefore final as it has been carried out by the acquiescence and participation of both sides in the court-ordered process. From the nature of a quo warranto action, the court had authority to declare who is entitled to hold the authority of office and to direct an election when necessary. La. C.C.P. art. 3902. Therefore, we will consider only the asserted questions of procedure remaining after the March 24 election.
A portion of Rev. Carthon’s argument rests upon the assertions that this dispute is exclusively “ecclesiastical,” barring the court’s interference with church governance. From our review of the ecclesiastical principles pertaining to the Free Exercise Clause, the church’s selection of its own clergy is a core matter of ecclesiastical self-governance. However, the judgment now appealed does not make or interfere with any such pastoral selection by the church as a collective body. Instead, both sides seek court | ^assistance declaring the powers for church governance under the existing corporate documents, the Articles of Incorporation and Bylaws, which the church chose to employ for its structure in reference to Louisiana’s non-profit corporations law. In its order for the March 24 election of the Board, the court interpreted and declared the process for the governance of the corporate body which the church had previously adopted through its incorporation. We therefore find that ecclesiastical interference is not present in this action.
Concerning the causes of action for the requested relief, we interpret the fact pleadings of both sides of this dispute as seeking declaratory relief concerning the corporate power of the Board in relation to the role of the pastor. Since a significant controversy existed and the participation of a large portion of the church’s membership acted through the March 24 election, we find that this justiciable controversy may be the subject of declaratory relief. As such, a cause of action exists.
As to the right of action of Plaintiffs, the two newly-elected Trustees purport to act individually under their standing as church members and Trustees. They also purport to act on behalf of the Board, which after March 24 is now appropriately constituted with nine members. Rev. Carthon’s challenge of this standing by Plaintiffs with the exception of no right of action was adjudicated at the May 17 evidentiary hearing and denied. Rev. Car-thon presented no evidence disputing the Plaintiffs’ representative capacity for the Board. Accordingly, we find that the exception of no right of action was properly denied.
| uMerits of the May 17 Judgment
The trial court’s ruling recognizing the March 24 election of the Board was a thorough assessment of the election process which reveals no manifest error of fact or error in the application of the corporate governing provisions for the church. Despite the past conflict involving Thornton and Williams and Rev. Carthon’s suspension of the two men from church office, Thornton and Williams remained active members of the church. Their election to the Board was by the entire membership which, ultimately, is the basic body of the *563 church. Thus, any question of the two men’s prior conflict with Rev. Carthon’s leadership was resolved in their favor by the membership with the March 24 vote.
Finally, the quo warranto claims and allegations of Plaintiffs were sufficient to allow the trial court to issue the injunc-tive relief preventing Rev. Carthon’s participation in church matters. The court’s rulings sanctioning the newly-elected Board and holding Rev. Carthon’s immediate participation in abeyance were clearly aimed at allowing the Board and church membership time to deliberate and choose the ministerial leadership for the church.

Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Rev. Carthon.
AFFIRMED.

. These letters were admitted into evidence but are not contained in the record before us.

. At a January 31 hearing, the court ruled that according to this Article, the Pastor was not a voting member of the Board of Trustees.

. This Article was first included in the record as an attachment to Rev. Carthon's Rule of Contempt which was filed after the May 17 trial and was never specifically introduced into evidence at trial.

. Per order of this court on November 9, 2012, the trial court certified the May 22, *560 2012 judgment as an appealable final judgment in a Per Curium Memorandum dated December 18, 2012.