DREW, J.
Lin this matter involving alleged damages to property caused by contamination from mineral operations, the primary issue is the legal effect of the mineral servitude owners’ rights to sue for damages that were conveyed to the surface owners. The plaintiffs[1] acquired the property (surface rights only) in 2004. Oil and gas exploration on the property began in 1945.
*729 By assignments executed[2] from the mineral servitude owners of 99% of their rights to make claims for damages, the plaintiffs sought recovery for harm resulting from long-term oil and gas activities on their property conducted or controlled by one or more of these defendants:
• Chevron U.S.A., Inc. (“Chevron”), the original mineral lessee of the Wagoners’ property (via a leasing agent);
• Merit Energy Company, LLC; Merit Management Partners I, L.P.; Merit Energy Partners, III, L.P.; and Merit Energy Partners D-III, L.P. (collectively “Merit”);
• Devon Energy Production Company, L.P. (“Devon”);
• Denbury Onshore, L.L.C. (“Denbury”);
• Smith Operating & Management Co. (“Smith”);
• LSJ Exploration, L.L.C. (“LSJ”);
• Diamond South Operating, L.L.C. (“Diamond”); and
• Oil & Ale LSJ, L.L.C. (“Oil & Ale”).
Merit, Devon, Denbury, Smith, LSJ, and Diamond are direct or remote assignees of Chevron.
|2The Wagoners appeal a judgment from the Sixth Judicial District Court which granted the exceptions of res judicata filed by Chevron, Merit, and Devon and granted exceptions of lis pendens filed by Denbury, Smith, LSJ, Diamond, and Oil & Ale. We reverse, in part, the judgment of the trial court and remand for further proceedings.
The Wagoners’ acquisition of the mineral servitude owners’ right to sue for damages to the property, which occurred before the Wagoners purchased the surface rights, resulted in plaintiffs appearing in a different capacity than they possessed as plaintiffs in previous litigation against these same defendants. This judgment is strictly limited to that determination. A resolution on whether plaintiffs are entitled to any recovery must be determined by the trial court to which this matter is remanded for further proceedings.[3]
FACTUAL AND PROCEDURAL BACKGROUND
In the previous litigation, Wagoner v. Chevron, 45,507 (La.App.2d Cir.8/18/10), 55 So.3d 12, writ denied, 2010-2773 (La.3/2/12), 83 So.3d 1032 (hereinafter Wagoner I), this court set out the factual background in its opinion on rehearing:
This action involves a claim for damages to a 193-acre tract of land located in the Lake St. John Oil and Gas Field in Concordia Parish, Louisiana. Operations on the property were commenced by Chevron in 1945 pursuant to three mineral leases obtained from the previous owners, the Pasternack family. In June 1999, the Pasternack family sold the property, reserving their mineral interests, in a cash sale to James and Jane Funderburg and David and Dale Steck-ler. One month | ?,later, the Stecklers sold their interest in the property to the Funderburgs. In 2004, Plaintiffs purchased the property from the Funder-burgs. None of the transfers of the surface interests in Plaintiffs’ chain of title included a specific assignment of the right to sue for property damages. After purchasing the land from the Fun-derburgs, Plaintiffs discovered that the *730 subsurface of their property was contaminated with exploration and production waste, particularly through the use of unlined pits. Plaintiffs filed suit in August 2008, claiming that their property was contaminated by the oil and gas exploration and production activities of Defendants.
From 1945 to 1992, Chevron leased and conducted oil and gas operations on the property now owned by Plaintiffs. From 1992 through 2002, Devon (previously named Pennzoil) conducted operations on the property pursuant to a lease assignment from Chevron. From 2002 to 2004, Merit conducted operations on the property pursuant to a lease assignment from Devon.
Wagoner I, 55 So.3d at pp. 20-21.
In Wagoner I, the Wagoners sued the same parties named as defendants in this ease (Chevron, Merit, Devon, Denbury, Smith, Diamond, LSJ, and Oil & Ale) in this same court. The Wagoners’ claims against Chevron, Merit, and Devon in Wagoner I were dismissed on an exception of no right of action. That ruling was based upon the application in Wagoner I of the “subsequent purchaser rule.” This court affirmed the judgment sustaining the exception of no right of action. The Louisiana Supreme Court denied writs.
In Walton v. Burns, 47,388 (La.App.2d Cir.1/16/13), — So.3d -, 2013 WL 163739, Judge Moore explained that, although the supreme court’s writ denial in Wagoner I is without precedential value, the writ denial allowed this court’s application of the subsequent purchaser rule to stand.
The defendants in Wagoner I, who appeared in the mineral chain of |4title after the Wagoners acquired their surface ownership in 2004, were not dismissed from Wagoner I (namely, Denbury, Smith, Diamond, LSJ, and Oil & Ale), and remain defendants in Wagoner I today.
The “subsequent purchaser rule” was explained by the supreme court in Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 2010-2267 (La.10/25/11), 79 So.3d 246:[4]
The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.
Eagle Pipe, supra at pp. 256-257.
Absent an assignment or subrogation of the right to sue a third party for property damage inflicted before acquisition of the property, the present property owner has no right of action to sue third parties for damages occurring prior to his purchase. Eagle Pipe, supra.
After the district court in Wagoner I granted the exceptions of no right of action filed by the defendants Chevron, Merit, and Devon, the Wagoners obtained an assignment of 99% rights from the owners of the mineral servitudes (who were also successors of former surface owners) to seek recovery for damages to the property caused by oil exploration and production.
The Wagoners attempted to assert these assigned claims amending their pleadings in Wagoner I. Their motion to amend was denied. 1 ¿Subsequently, the Wagoners filed this present litigation, hereinafter denoted as Wagoner II. All defendants re *731 sponded to Wagoner II with exceptions of res judicata or lis 'pendens. The trial court granted all of the exceptions, dismissing the case in its entirety with prejudice as to all defendants.
The Wagoners have appealed.
DISCUSSION
The issue is whether either res judicata or lis pendens bars the Wagoners from suing to recover damages which occurred prior to their 2004 acquisition of the property. The Wagoners claim that by virtue of the assignment, they acquired new rights they did not possess at the time of Wagoner I. It is under these newly acquired rights that they bring the current claims. The present suit against the oil and gas companies alleges liability for breach of obligations owed to the mineral servitude owners and lessors — the Paster-nacks — under the mineral lease and the Mineral Code.
In Wagoner I, the trial court found, and this court affirmed, that the landowners at the time the contamination occurred possessed the real and actual interests to seek the damages. The right to damages which is conferred by a lease (either mineral or a predial lease) is a personal right, not a property right. Therefore, the right to seek damages does not pass to the new land owners absent a specific conveyance of that right in the instrument of sale.
As they were not parties to the original lease from the Pasternacks to Chevron, the Wagoners’ deed contained no express assignment of the right to sue mineral lessees for damages. Additionally, those leases contain no | language allowing the Wagoners to sue for damages as third party beneficiaries (via a stipulation pour autri). As current surface owners, the Wagoners had no right to bring suit against companies that conducted exploration and production on the property prior to the plaintiffs’ purchase in 2004. Wagoner I, 55 So.3d at p. 23.
In addition to suing the mineral lessees for damages resulting from oil exploration and production, current surface owners of contaminated property have other legal remedies available to them. Among those avenues noted in Eagle Pipe, supra, were an action in redhibition, a suit to rescind the sale, and/or an action to reduce the purchase price. Further, an action for remediation of the property exists. Eagle Pipe, supra.
In Walton v. Burns, supra, Judge Moore also noted legal remedies for surface owners of contaminated property. La. R.S. 31:11(A) provides that the landowner, the owner of the mineral rights and the lessees of minerals must conduct their activities with “due regard” for the rights of others. La. R.S. 31:22 directs that the owner of a mineral servitude is obligated to restore the surface to its original condition. In La. R.S. 31:122, the mineral lessee is directed to conduct his activities as a “reasonably prudent operator.” La. R.S. 30:29 sets out a special procedure for resolving environmental damages from oilfield operations. Walton, supra.
Under the foregoing reasoning, the Wagoners (surface owners) could have brought an action against the Pasternacks (mineral servitude owners) to obtain remediation. The Wagoners noted at oral argument that they did not want to sue the Pasternacks and that, in exchange for the Wagoners’ | ^promise not to file suit against them, the Pasternacks assigned the Wagoners 99% of their rights to seek damages caused by oilfield contamination. Whether that assignment has transformed the status of the parties, causes of action, and the transactions and occurrences, as the Wagoners allege, is the determinative issue in this case.
*732 In Eagle Pipe, supra, the court addressed the basic principles of the civil law of property and obligations. La. C.C. art. 476 provides that a person may have various rights in things such as (1) ownership, (2) personal and predial servitudes, and (3) other real rights allowed by law. La. C.C. art. 477 defines ownership as the right that confers on a person direct, immediate and exclusive authority over a thing.
The owner of a thing may perform a certain number of juridical acts relating to the thing, all consisting of the transfer to another, in whole or in part, the right of enjoyment and of consumption that belongs to the owner of the thing. If he transmits all his right, it is said that he alienates the thing; he performs an act translative of ownership. If he grants merely a right of partial enjoyment of the thing, it is said that he dismembers his ownership. He creates upon the thing a real right of usufruct, emphyteusis or servitude. He is still owner but his ownership has been dismembered. Somebody else has a part, more or less important, of his rights upon the thing.
Eagle Pipe, supra at p. 258
The foregoing analysis by Justice Clark reflects Comment (d) of La. C.C. art. 476 which notes individuals have contractual freedom to create new real rights by dismembering them ownership as they see fit. An example of this dismemberment of ownership is the Pasternacks’ transfer to the Wagoners of their rights to seek damages for oil activity contamination.

Lis Pendens

isThe Wagoners claim that the trial court erred when it granted defendants’ (Denbury, Smith, LSJ, Diamond, Oil & Ale) exception of lis pendens. When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by filing the declinatory exception of lis pen-dens. La. C.C.P. arts. 531, 925 A(3). A fair test to decide whether an exception of Us pendens should be granted is to determine whether the first suit would be res judicata to the second suit. Walton, supra.

Res Judicata

The Wagoners claim that the trial court erred when it granted defendants Chevron, Devon, and Merit’s exceptions of res judicata. The following analysis will be used to determine whether the trial court erred in granting the exceptions of both res judicata and lis pendens.
La. R.S. 13:4231, as amended in 1990, defines res judicata in Louisiana:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
*733 ]gThe supreme court in Burguieres v. Pollingue, 2002-1385 (La.2/25/03), 843 So.2d 1049, determined that, based upon the language of the statute, five elements must be satisfied to conclude that a second action is precluded by res judicata: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. All five of these prerequisites must be satisfied.
Citing the supreme court’s opinion in Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, this court observed that the principle of res judicata is stricti juris; any doubt concerning application of res judicata must be resolved against its application. Flanigan v. City of Shreveport, 45,459 (La.App.2d Cir.10/27/10), 50 So.3d 938.
In the present case, the first two elements for application of res judicata are satisfied. The parties agree that judgment in Wagoner I is both final and valid.
The third requirement of res judicata is that the parties in both suits are the same. In Burguieres, supra, the supreme court explained that, although not explicitly stated, the requirement in La. R.S. 13:4231 that the parties be the same means the identical parties must appear in the same capacities in both suits.
In re Succession of Burguieres, 00-147 (La.App.5th Cir.10/18/00), 802 So.2d 660, the decedents’ three children alleged their father’s lack of | incapacity to make a testament which they asserted was made pursuant to undue influence. They sued their aunt, Mrs. Pollingue in her capacity as executrix of the succession, and sought to annul the testament and remove her as executrix. After the children prevailed and the judgment was final, the children again sued Mrs. Pollingue in her capacity as curatrix of the decedent and her husband, as under curator, seeking damages for breach of their fiduciary duty. On any claims associated with Mrs. Pollingue’s actions as executrix, the supreme court affirmed the grant of the exception of res judicata. The grant of the exception of res judicata as to any claims related to her actions as curatrix (and not arising out of her actions as executrix) was reversed. Mrs. Pollingue was sued in a different capacity, a curatrix, in the second suit as opposed to her status as the succession executrix in the first suit. Likewise the granting of the exception of res judicata as to Dr. Pollingue was reversed, since there was a lack of identity of parties. He had not been not a party to the first suit. Burguieres, supra.
The Wagoner II defendants here claim that the assignment does not alter anything from Wagoner I and is nothing more than an attempt to manufacture claims. The defendants support this assertion by describing the petitions in Wagoner I and Wagoner II as “identical.” However, the petition in Wagoner II includes an additional paragraph asserting new rights the Wagoners obtained as a result of the Pasternacks’ assignment. The first sentences in paragraph 3 of the petitions in Wagoner I and Wagoner II are identical:
Plaintiffs are lessors, assignees, third-party beneficiaries, and/or successors in interest to certain oil, gas, and mineral |,] leases between plaintiffs and defendants, or own property contaminated by the oil and gas activities conducted or controlled by one or more defendants.
In Wagoner II, this paragraph is expanded to contain the claims under the *734 assignments from the Pasternacks.[5] Additionally, the Wagoner II petition contains allegations paragraphs 38-47 which do not appear in the original Wagoner I petition. Despite the defendants’ contention that the assignment does not alter anything from the previous suit, we find that it does, in fact, alter the capacity in which the plaintiffs appear.
In Wagoner I, the Wagoners were barred by the subsequent purchaser rule from seeking damages for harm to the property occurring prior to their 2004 purchase. The purpose of res judicata is to bar relitigation of claims that have been previously adjudged. This doctrine serves public policy interests by promoting judicial efficiency and fairness between the parties. La. R.S. 13:4231 Comment (a). Res judicata does not bar a subsequent 112claim between the same parties if the parties appear in a different capacity. Burguieres, supra. Only the Wagoners’ rights as the present surface owners were at issue in Wagoner I. Via the assignment, the Wagoners have essentially stepped into the shoes of the Pasternacks, the prior mineral servitude owners/lessors.
The rights of the servitude owners/lessors were not litigated in Wagoner I. Since the Pasternacks’ claims were not previously litigated, neither res judicata nor lis pendens applies to the Wagoners’ current claims arising from the Paster-nacks’ assignments. Barring these claims would not serve judicial efficiency or fairness between the parties and would unfairly and improperly preclude the claims of the mineral servitude owners and their assignees, the Wagoners. In Wagoner I, the plaintiffs filed suit in their capacity as present surface owners who acquired the property in 2004. In Wagoner II, the plaintiffs are also suing in their capacity as assignees of the rights of the mineral servitude owners/lessors as well as prior surface owners.
Wagoner I and Wagoner II do not include the “same parties,” because the Wagoners are appearing in a different capacity in Wagoner II than they did in Wagoner I. They could not have previously appeared in their current capacity, as *735 they did not obtain the rights of the servitude owners/lessors until after the final judgment in Wagoner I. Because the second suit concerns the defendants’ obligations to the mineral servitude owners/lessors, it follows that the second suit should not be precluded.
The defendants rely on Minvielle v. Atlantic Refining Co., 05-1312, 2007 WL 2668715 (W.D.La.2007), in support of their exceptions of res judicata and lis pendens. Minvielle, however, is distinguishable from the present case. The initial Minvielle litigation was to recover damages for contamination arising out of oil and gas activities:
On October 19, 2004, this court dismissed plaintiffs claims for lack of standing. The ruling was based on a finding that the 1998 cash sale did not confer on plaintiff a specific assignment of rights to recover damages from third parties, nor did the 1961 lease create a stipulation pour autri in favor of plaintiff. The court concluded that plaintiff lacked standing to bring contractual claims arising from the 1961 lease. As to the tort claims, the court also concluded that plaintiff lacked standing because plaintiff was seeking damages arising from operations which occurred prior to plaintiffs acquisition of the land.
The Minvielle plaintiff asserted the same rights in both actions and never claimed to be appearing in a different capacity or asserting different rights. After dismissal of the first suit, the plaintiff filed a second suit and attempted to use an “Amendment to Act of Cash Sale” to show that their vendors had assigned their personal right to sue for damages at the time of the original sale. Minvielle attempted to cure the lack of standing with the amended sale which purported to confer standing. The claims in both suits were identical, the parties were the same and the judgment of lack of jurisdiction was final. The court found that the second suit was barred by res judicata. Minvielle, supra.
In Wagoner I, the plaintiffs asserted only those rights they believed they possessed as present surface owners. In the present action, the Wagoners are appearing as holders of the mineral servitude owner’s rights to damages from oilfield contamination — rights they only acquired after the final judgment in Wagoner I.
| uThis court in Wagoner 1[6] stated that the right to damages conferred by a lease (whether mineral or a predial) is a personal right, not a property right. That personal right to sue for damages does not pass to the new owner without a specific conveyance of that right in the instrument of sale; i.e., the mineral servitude owner’s personal right to sue for damages must be expressly assigned. The Wagoners did not and could not claim that the Paster-nacks intended to assign them their rights at the time of the original sale because the Pasternacks were not the Wagoners’ vendors. Because the Pasternacks had not yet assigned to the Wagoners their rights at the time of the original sale, the Wagoners did not and could not have attempted to assert those claims in Wagoner I.
A person appearing in different legal capacities may bring multiple actions involving the same transaction or occurrence without being barred by res judica-ta. Burguieres, supra. We find that the Wagoners do not appear in the second suit in the same capacity in which they appeared in the first. Because of this difference in capacities, there is a lack of identity of the parties between the two suits.
*736 CONCLUSION
For the foregoing reasons, we conclude that the trial court erred in finding that the plaintiffs appeared in the same capacities in Wagoner I and this litigation, Wagoner II. The claims of the Wagoners arising from their status as surface owners since 2004 were dismissed in Wagoner I. The grant of the exception of res judicata as to Chevron, Merit, and Devon as to 11fithe Wagoners’ claims as surface owners is affirmed along with the dismissal of those claims with prejudice. For the Wagoners’ claims made as assignees of the Pasternacks right to sue for damages as mineral servitude owners, the exceptions of res judicata as to Chevron, Merit, and Devon are reversed, and the matter is remanded for further proceedings on those claims.
As previously noted, the Wagoners’ actions as surface owners since 2004 against Denbury, Smith, LSJ, Diamond, and Oil & Ale are pending in Wagoner I. The sustaining of the exceptions of lis pendens as to those claims against those defendants are affirmed. The granting of any exception dismissing the Wagoners’ claims against Denbury, Smith, LSJ, Diamond, and Oil & Ale arising from the Wagoners’ status as assignees of the Past-ernacks’ right to sue for damages as mineral servitude owners is reversed, and the matter is remanded for further proceedings.
The trial court is directed to consolidate these matters for trial. All costs of the appeal are assessed to the defendants.
DECREE
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS FOR FURTHER PROCEEDINGS.
CARAWAY, J., concurs.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, DREW, MOORE and GARRETT, JJ.
Rehearing denied.
WILLIAMS, J., would grant rehearing.

. Plaintiffs are Larry Wagoner, Jean Wagoner, Russell G. Wagoner, Sr., Angela C. Wagoner, Roy Wagoner, and Ivie Wagoner ("the Wagoners”).

. These assignments were executed at the end of 2009 and early 2010 and filed into the public records on September 7, 2010.

. We observe that the interests of judicial economy and efficient use of judicial resources will be served by a consolidation for trial on the merits of this litigation with the previous suit, Wagoner I, which is still pending in the trial court.

. This opinion authored by Justice Clark contains a scholarly dissertation on Louisiana civil law of property and obligations along with the detailed history of the development of the subsequent purchaser rule.

. Plaintiffs are third-party beneficiaries to certain oil, gas, and mineral leases between plaintiffs and defendants and are owners of property contaminated by the oil and gas activities conducted or controlled by one or more of the defendants. Plaintiffs further state that the mineral servitude owners for the property at issue in this litigation have assigned to plaintiffs 99% of their claims for damages caused by oilfield operations on the property. As shown in the documents attached as Exhibit A, these assignments include, without limitation, (a) the mineral servitude owners’ rights, title, claims, demands, and interest in the Property, surface and sub-surface, real, personal and mixed, movable, immovable, corporeal and incorporeal, including any personal or real claims for property damages caused to the property and excluding the rights to the actual mineral servitude, (b) any and all rights, real or personal, to claim property or remediation damages from anyone, including but not limited to former owners, lessees or other persons with an interest of any kind in the property, all former or current mineral lessees, assignees, or sublessees of the property, any and all former surface lessees, mineral servitude owners or assignees of the property, and any and all oil and gas operators, drillers, working interest or service companies, (c) any and all rights, real or personal, to make claims for environmental contamination or pollution against anyone arising out of or associated with any oil and gas operations or any other operations that have occurred on the property, whether before, during or after the mineral servitude owners’ ownership of the property, and (d) any and all rights to assert claims for breach of any mineral or surface leases affecting the property as a result of environmental contamination or pollution. As the assignees of the foregoing rights, plaintiffs are entitled to pursue the claims set forth in this petition.

. Wagoner, supra, 55 So.3d at p. 23.