LORA PITRE

VERSUS

LOUISIANA THOROUGHBRED BREEDERS
ASSOCIATION, WARREN HARANG, III,
JAKE DELHOMME, DANIEL GUIDRY, VAL
MURRELL, DAVID TILLSON, AND KEITH
HERNANDEZ

NO. 22-CA-467

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 814-185, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING


November 15, 2023


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, Robert A. Chaisson, Stephen J. Windhorst, and Scott U. Schlegel


**JUDGMENT VACATED; REMANDED**
   **RAC**
   **SMC**
   **SJW**
   **SUS**

**JOHNSON, J., DISSENTS WITH REASONS**
   **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
LORA PITRE
     A. George Grimsal
     Micah C. Zeno
     Bryan M. Dupree

COUNSEL FOR DEFENDANT/APPELLANT,
LOUISIANA THOROUGHBRED BREEDERS ASSOCIATION, WARREN
HARANG, III, JAKE DELHOMME, DANIEL GUIDRY, VAL MURRELL,
DAVID TILLSON, AND KEITH HERNANDEZ, CARROL CASTILLE,
THOMAS EARLY, MICHELLE LAVOICE AND MICHELE RODRIGUEZ
     Judy L. Burnthorn
     Joseph L. McReynolds
     Beverly A. Delaune
     Mark P. Allain, Jr.
     Alexandre E. Bonin
     R. Christian Bonin
     Jean-Marc Bonin
     Paul A. Bonin
     Christopher H. Corkern
     John L. Duvieilh

**CHAISSON, J.**

In this appeal, defendants seek review of the trial court judgment that granted Lori Pitre's "Petition for Quo Warranto, Declaratory Judgment, Mandamus; and for Preliminary Injunction" and awarded her attorney's fees and costs. In addition, defendants seek review of the trial court's denial of their exceptions of no cause of action and prescription. For the reasons that follow, we find that the trial court erred in granting Ms. Pitre's petition and the relief requested therein. Accordingly, we vacate the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

Lora Pitre is a longstanding member of the Louisiana Thoroughbred Breeders Association ("LTBA"), a non-profit corporation that regulates the breeding and accreditation of thoroughbred horses in Louisiana. Through the years, Ms. Pitre has been active in the organization and has previously served on the Board of Directors and several committees. In June of 2020, the annual election of the Board of Directors took place. The results from that election revealed that the following four individuals were elected to the board: Val Murrell, David Tillson, Daniel Guidry, and Keith Hernandez.[1]

At the subsequent board meeting on August 18, 2020, the newly elected board elected its officers. In particular, the board elected Warren Harang as its president, Jake Delhomme as its first vice-president, and Daniel Guidry as its second vice-president. In addition, at the August meeting, the Board of Directors, by a nine to four vote, adopted amendments

---

[1] Val Murrell and Daniel Guidry were members of the previous board who were re-elected to the board in the June 2020 election when their prior terms expired. David Tillson and Keith Hernandez were not members of the prior board and were newly elected to the board in the June 2020 election.

relating to certain breeding and domicile requirements for mares. Ms. Pitre was present at this meeting to advocate against the amendments, and according to the minutes, she presented a stack of petitions signed by members who were against the proposed changes to the foal accreditation provisions in the bylaws. Despite this opposition, the amendments passed.

On January 25, 2021, Ms. Pitre, who was displeased with the passage of these amendments, filed a "Petition for Quo Warranto, Declaratory Judgment, Mandamus; and for Preliminary Injunction" against the LTBA and six of the board members who voted for the amendments, including Warren Harang, III, Jake Delhomme, Daniel Guidry, Val Murrell, David Tillson, and Keith Hernandez.[2] In her petition, Ms. Pitre attacked the authority of the sued board members based on purported violations of the bylaws in conducting the June 2020 board election and alleged that subsequent to this defective election, defendants wrongfully elected or re-elected themselves as officers and then unlawfully amended the bylaws regarding foal accreditation.

With regard to the specific improprieties in the elections, Ms. Pitre's allegations fall into four basic categories: 1) specific and individualized allegations against Mr. Tillson and Mr. Guidry regarding their eligibility to serve on the board and as officers due to their alleged lack of regular membership in the LTBA; 2) general allegations that there were individuals who timely applied for membership in the LTBA, but whose applications were not taken up for approval and thus were denied the ability to vote in the Board of Directors election; 3) general allegations that there were individuals who did not comply with the approval procedure in the LTBA's

---

[2] Ms. Pitre chose not to name as defendants the other three board members who voted for the amendments, namely: Carrol Castille, Tom Early, and Michele LaVoice, despite the fact that she made extensive allegations of conflicts of interest against Mr. Castille and Mr. Early.

bylaws and/or pay their dues to the association, but were nevertheless allowed to vote in the Board of Directors election;[3] and 4) general allegations that the prior Board of Directors and executive director failed to comply with all bylaw requirements for conducting the Board of Directors election. In her petition, Ms. Pitre requested that the court order defendants to appear and show by what authority each defendant claimed to hold office in the LTBA. She also requested a declaratory judgment vacating the board election, the election of officers, and the adoption of amendments to the foal accreditation provisions of the bylaws, mandamus relief ordering the board to conduct a new election under the supervision of a court-appointed arbitration panel, injunctive relief, and attorney's fees and costs.

In response, defendants filed an answer and exceptions of prematurity, unauthorized use of a summary proceeding, improper culmination of actions, vagueness, prescription, and no cause of action. On February 22, 2021, following arguments of counsel, the trial court denied all of defendants' exceptions, and the matter proceeded to hearing on the *quo warranto* petition.

At the hearing, Roger Heitzmann, who has served as the LTBA's executive director and secretary-treasurer for approximately ten to eleven years, testified on behalf of the defense.[4] Mr. Heitzmann explained that in order to become a member of the LTBA, a person has to fill out a membership form, pay his dues, own 50% of breeding stock, and sign a form *certifying* that the information given to the LTBA is true. In response to Ms.

---

[3] Ms. Pitre attached as Exhibit G to her petition a list of 140 names of individuals that she alleged voted in the election who were ineligible, but did not specify the reason as to why each individual person was allegedly ineligible.

[4] Defense counsel first called Lora Pitre as a witness. However, when defense counsel proceeded to question her, the trial court sustained, as irrelevant, all objections to questions relating to whether she had received a copy of the membership list from the LTBA prior to April 7, 2020, and whether she made any objections to the membership list approved by the board at its April meeting prior to the June 2020 board elections.

Pitre's specific and individualized allegations against Mr. Tillson, Mr. Heitzmann testified that Mr. Tillson submitted a membership application in 2019, and confirmed documents presented to him as the 2019/2020 membership application submitted by Mr. Tillson to the LTBA.[5] In response to Ms. Pitre's specific and individualized allegations against Mr. Guidry, Mr. Heitzmann next identified the LTBA's record of the 2019/2020 membership application for the entity Docatty Stables, LLC, and confirmed this document is kept in the normal course and scope of his employment with the LTBA as a business record. Mr. Heitzmann testified that he is aware through independent knowledge about the membership of Docatty Stables, LLC, specifying that Danny Guidry and Eddie Guidry each have fifty percent ownership. The documents related to this membership application were introduced into evidence as D-4. Mr. Heitzmann then testified that Jake Delhomme is a long-standing regular member of the LTBA through his business, that he has served on the Board of Directors for many years, that he was last elected to the Board of Directors in 2018, and that no challenge has ever previously been raised regarding Mr. Delhomme's participation on the board. Mr. Heitzmann relayed that he was present at the August 18, 2020 Board of Directors meeting, when the election of officers took place, and that Jake Delhomme was elected as the first vice-president at that meeting.

Mr. Heitzmann next testified that he is familiar with the membership of Keith Hernandez, that he has been an active member of the LTBA for more than sixteen years, and that he was seated by the board as a director at

---

[5] Mr. Heitzmann identified the documents that were copied from the LTBA office relating to the membership of Mr. Tillson and the registrations of two mares that he owns either fully or partially. The membership documents were admitted as D-3 for the limited purpose of confirming they were the application documents he received on behalf of Mr. Tillson. The trial court did not allow Mr. Heitzmann to testify as to the veracity of the information contained in the documents.

the August 2020 meeting.  Further, Mr. Heitzmann confirmed that Warren Harang is an LTBA member, that he has served on the Board of Directors for many years with his latest election in 2019, and that he was elected president at the August 18, 2020 board meeting.  Mr. Heitzmann also stated that Val Murrell is a regular member of the LTBA, and that he was seated as a director at the August 18, 2020 board meeting.  According to Mr. Heitzmann, during his time at the LTBA, no one has been denied the ability to run for the Board of Directors because he maintains membership as a business entity.  Further, he has never been instructed that someone must have an individual membership to run for the Board of Directors because "the board is doing everything it can to get as many members involved as possible."

Mr. Heitzmann next explained the grievance procedure set forth in the bylaws relating to the filing of a complaint about any member as follows:

> It's upon the filing of a written complaint about any member on the LTBA complaint form, an investigation will be performed by the LTBA.  After which the member complained of shall be given reasonable notice of the complaint and an opportunity to be heard.  The Board of Directors, after the hearing, upon 75 percent of the vote of the directors present, may take any action against a member deemed appropriate to protect the interest of this association, including the sanctions of expulsion from, termination of or suspension of membership.

Mr. Heitzmann confirmed that to his knowledge, no complaint under that provision has ever been lodged against the memberships of Mr. Tillson, Mr. Guidry, Mr. Murrell, Mr. Hernandez, Mr. Harang, or Mr. Delhomme.  Further, no complaints were filed relating to the nominations of Mr. Tillson, Mr. Guidry, Mr. Hernandez, and Mr. Murrell for the Board of Directors election.

Mr. Heitzmann then testified that the membership list was produced to the Board of Directors for the 2020/2021 election.  He explained that, as is

the procedure every year, he had one of his workers compile the membership list of the voting members, including the lifetime and regular members. On April 2, 2020, he emailed this list to the executive committee to be placed on the agenda for the April meeting. The minutes from the April 7, 2020 board meeting were identified by Mr. Heitzmann and introduced at the hearing as D-5.[6] Mr. Heitzmann confirmed, in accordance with the minutes, that the membership list was unanimously approved by the Board of Directors at the April 7, 2020 board meeting. Mr. Heitzmann stated that no objections to any member on the list were made by any board member or regular member prior to or at the time the list was approved.

Following approval, the list was sent to MK Elections, a neutral third-party balloting agency that had been used for years by the LTBA to mail ballots and tally votes. Mr. Heitzmann testified that in accordance with the LTBA election procedures, the ballots went out June 1, 2020, and the election was held open until June 30, 2020. During his testimony, Mr. Heitzmann identified a copy of the election results sent to him by MK Elections. Mr. Heitzmann testified that according to the final report, introduced at the hearing as D-6, the following were elected as directors: Val Murrell, David Tillson, Daniel Guidry, and Keith Hernandez. Mr. Heitzmann posted the election results on the LTBA website on July 2, 2020.[7] According to Mr. Heitzmann, no one presented an objection to him or to the LTBA as to the election results prior to this lawsuit being filed.

Mr. Heitzmann relayed that the first Board of Directors meeting following this election was August 18, 2020. Mr. Heitzmann was present at

---

[6] Mr. Heitzmann, who prepared the document, acknowledged that the minutes contain a typographical error. The minutes reflect the date of the meeting as February 8, whereas the minutes are actually from the April meeting.
[7] This letter was introduced at the hearing and marked as D-7.

the meeting and prepared the minutes, which were identified in court and introduced as D-8. Both the minutes and Mr. Heitzmann's testimony reflect that Warren Harang was elected president; Jake Delhomme was elected first vice-president; and Daniel Guidry was elected second vice-president. Mr. Heitzmann testified that no objections were lodged to the election of officers at the board meeting or prior to this lawsuit being filed.

Thereafter, in response to Ms. Pitre's allegation that the annual membership meeting for 2020 was cancelled, Mr. Heitzmann explained that the annual membership meeting is "basically the awards ceremony for horse of the year." Mr. Heitzmann claimed that during his time as executive director, there has never been a Board of Directors election in conjunction with the annual membership meeting. Rather, the Board of Directors election usually takes place in June of every year. Mr. Heitzmann then explained the bylaw amendment relating to foal accreditation as follows:

> Basically, the board has added two caveats to the old rules, per se, to make it short and simple. The old rules are still in place; however, they offer two caveats. One to where a mare can now go out of state every year to breed, but they have to be back by a certain date. And if they do so, they lose 50 percent of their breeder's awards.

> * * *

> Just -- there's another caveat to where a mare who lives within close proximity or just outside of the state can come here, spend some time, must breed to a Louisiana stallion, and still be eligible as an accredited Louisiana bred but also gives up 50 percent of their awards.

Mr. Heitzmann stated that, in the last decade, the Louisiana foal crop has decreased every year, and that the membership revenue has likewise decreased from about $100,000.00 in 2010 to $50,000.00 in 2020.[8] Mr.

---

[8] Defense counsel attempted to question Mr. Heitzmann about the purpose of the amendment, the differences in the bylaws change, and the possible favorable effects resulting from the amendments to the bylaws relating to foal accreditation, including raising the foal crop. The trial court sustained Ms. Pitre's counsel's objections to this line of questioning.

Heitzmann further testified that some breeders have already applied for foal accreditation based on the new amendments and have incurred contractual obligations based on those amendments. Mr. Heitzmann, however, explained that any breeder operating under the pre-amendment changes would not be affected by the amendments.

At the conclusion of Mr. Heitzmann's testimony, Ms. Pitre's counsel moved for a directed verdict under La. C.C.P. art. 1810. After considering arguments of counsel, the trial court granted Ms. Pitre's Motion for Directed Verdict and further granted her "Petition for Quo Warranto, Declaratory Judgment, Mandamus; and for Preliminary Injunction." In granting the petition, the trial court concluded that defendants did not meet their burden of proof in the *quo warranto* action to prove that they did, in fact, "comply with or that their officers are duly elected to have the authority to hold the office in which it has." In making this determination, the trial court reasoned as follows:

> All right. Considering the allegations made by Ms. Pitre that the LTBA failed to show that there were membership applications that were approved by the board, I reviewed the bylaws. And under Section 15 regarding a membership committee, it says that the president shall annually appoint a membership committee which shall consist of the president and a minimum of three members of the Board of Directors. The membership committee shall periodically review membership applications to the association for renewal or approval. The management of Louisiana Thoroughbred -- management of the LTBA will provide the committee with a computer-generated list of members, membership type, name of horse owned, percentage owned, dues status and last foal accredited. This list shall be available to the committee 120 days and 60 days prior to the election so the committee can submit to the entire Board of Directors for approval the membership list at least 30 days prior to any election.
>
> Then it goes on to say: The membership committee shall provide a list of persons it feels should be approved as members to the secretary of treasurer for approval by the Board of Directors. For a member to vote, his membership shall be approved at least 30 days prior to any election.

I read the minutes. I understand the allegation here is that there was no list of people that were approved, yet they were on the voting list is, from what I understand, the allegation to be. I haven't seen either one of those       lists because they weren't produced in this hearing. I understand what the objection is. But, however, when I read the minutes, the minutes state that only one list was done, and that was the first list described in that, which is the members who would be allowed to vote. My understanding is, is there is no list of persons to be approved and some of the people never actually went through the formal approval vote or approval process. And I have not seen anything to rebut that allegation in these proceedings.

Also, Section 16 says that any committee, including the executive committee, shall keep minutes, records and shall report its activities into each regular meeting of the Board of Directors any such time as required by the board. And my understanding is that there are no minutes from any -- from the membership committee that would tell us who was approved or who wasn't approved.

*       *       *

Okay. In addition when I look at the membership -- and this is why I think the importance of the list -- of the two lists are important is that one  can be a member by virtue -- or an entity can be a member as long as its voting right is given to a regular member or designated to a regular member. And so in order for an entity to have a voting right of its members, partners or shareholders, they have to provide -- they have to comply with Part A, which is to designate one member, partner or shareholder with the right to vote, and that person designated must be a dues-paying regular member. However, they will only be entitled to one vote. No double dipping.

So the other problem I have with it is I don't see in the documents that I've been given where the persons who were designated by the LLC are, in fact, regular members as well by virtue of another application. That, too, was not submitted to the Court. And so I don't believe that, at this time, that Louisiana Thoroughbred Breeders Association has met its burden in the *quo warranto* action to prove that they did, in fact, comply with or that their officers are duly elected to have the authority to hold the office in which it has.

Thereafter, the trial court vacated the board election, the election of officers, and all actions of the board subsequent to the election. The trial court also issued a mandamus ordering the board to conduct a new election

under the supervision of a court-appointed arbitration panel and ordered that "during the pendency of the new election, the affairs of the LTBA shall be vested in the previous members of the board whose authority shall be limited solely to affecting a new election and conducting the ordinary day-to-day activities of the LTBA and who shall not take any other action, alter, amend, appeal or adopt any new bylaws except those necessary to effect the order of this Court." The court further prohibited defendants from entering into any agreements or contracts on behalf of the LTBA outside of the routine ordinary and regular course of business and enjoined "defendants from conducting any activity of behalf of the LTBA or otherwise holding themselves out as members or officers of the board and suspending the effect of the amendment or the modified amendment and the effects of any other acts of the LTBA on which the defendants voted or are otherwise involved." The court also awarded costs and attorney's fees to be submitted in a detailed bill within ten days. On March 25, 2021, the trial court signed a written judgment in accordance with its oral ruling and awarded attorney fees, costs, and expenses in the amount of $90,504.49.[9]

Defendants were ultimately granted a suspensive appeal.[10] On appeal, defendants set forth the following assignments of error:

> 1. The trial court erred as a matter of law and fact in denying Appellants' exception of no cause of action as to Board members Warren Harang, III and Jake Delhomme.

> 2. The trial court erred as a matter of law and fact in denying Appellants' exception of prescription to Ms. Pitre's challenge to the validity of prior Board's certification of the members eligible to vote in the June 2020 election.

---

[9] The judgment was amended on April 5, 2021, to correct the inadvertent omission of the second page of the judgment.

[10] Subsequent to the filing of defendants' appeal, this Court, on January 13, 2023, issued an order directing the trial court to amend its March 25, 2021 judgment "to include all of the appropriate and necessary decretal language, specifically the language of the omitted second page of the proposed judgment." This order was complied with, and the appeal proceeded.

3. The trial court erred as a matter of law and fact in declaring Mr. Guidry and Mr. Tillson ineligible to serve on the Board based on their membership status.

4. The trial court erred as a matter of law and fact by exceeding the scope of a *quo warranto* remedy to nullify the prior Board's certification of members eligible to vote and enjoin the foal accreditation amendments and by granting mandatory injunctive relief in the absence of sufficient allegations or proof of irreparable injury.

5. The trial court erred as a matter of law and fact in awarding attorney's fees and in failing to determine the reasonableness of the fees.

## DISCUSSION

In the present case, we find merit to defendants' arguments relating to the trial court's improper granting of the *quo warranto* petition. Accordingly, we decline to address each specific argument raised by defendants, but rather, we focus our attention on the sufficiency of the evidence produced at the *quo warranto* hearing.

Generally, in civil proceedings, the determination of whether a party has carried his burden of proof by a preponderance of the evidence such that he is entitled to judgment in his favor will involve a shifting of the burden of proof between the plaintiff and the defendant. Once the party with the initial burden of proof makes a *prima facie* showing that he has sustained his burden of proof, the burden shifts to the opposing party to present rebuttal evidence that tends to negate his opponent's evidence. In this manner, the trier-of-fact considers and weighs all of the evidence presented to determine whether the party with the burden of proof has carried his burden by showing that the truth of his assertions weigh in his favor and against his opponent by a preponderance of the evidence (*i.e.*, more likely than not), such that he is entitled to judgment in his favor.

Despite this general paradigm of the shifting of the burden of proof in civil proceedings, the Louisiana Code of Civil Procedure does recognize that there are instances where the party not having the initial burden of proof may be entitled to judgment in his favor without the necessity of presenting evidence to rebut his opponent's evidence. Those procedures are found in La. C.C.P. art. 1810, directed verdicts in jury trials,[11] and La. C.C.P. art. 1672(B), involuntary dismissals in judge trials.[12]

In this case, upon motion of Ms. Pitre, the trial court granted her Motion for Directed Verdict and ruled in her favor. While we recognize that a Motion for Directed Verdict was erroneous in this non-jury trial, we look past the styling of the motion to determine its substance, which was a request by Ms. Pitre for judgment in her favor based upon a finding that, upon the facts and law, defendants, who had the initial burden of proof, had shown no right to relief such that the burden did not shift to Ms. Pitre to present rebuttal evidence. In granting Ms. Pitre's Motion for Directed Verdict, the trial court of necessity had to determine that defendants failed to make a *prima facie* showing on their initial burden of proof. In this regard, we find that the trial court legally erred in holding defendants to a higher burden of persuasion than that contemplated by the *quo warranto* article, thus necessitating that we vacate the judgment of the trial court.

---

[11] La. C.C.P. art. 1810 provides: A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefore. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

[12] La. C.C.P. art. 1672(B) provides: In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

*Quo warranto* is defined in La. C.C.P. art. 3901 as "a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation or limited liability company, or directing a corporation or limited liability company to show by what authority it exercises certain powers." The writ of *quo warranto* is narrow in scope and is to be given only a limited use, which is to prevent usurpation of office or of powers.[13] In a *quo warranto* action, the individual defendant has the burden of showing by what authority he claims or holds office in the corporation. *Camillus Specialty Hosp., L.L.C. v. Riccio*, 13-1172 (La. App. 4 Cir. 1/30/14), 133 So.3d 287, 291; *Canedo v. Vicari*, 11-1116 (La. App. 5 Cir. 5/8/12), 99 So.3d 64, 68.

The relief to be granted by a writ of *quo warranto* is also limited. *Camillus Specialty Hosp., L.L.C. v. Riccio*, 133 So.3d at 291. If the court determines that a person is holding an office without authority, the judgment shall forbid him to do so. The judgment may further declare who is entitled to the office and may direct an election when necessary. When the court finds that a corporation or limited liability company is exceeding its powers, the judgment shall prohibit it from doing so. La. C.C.P. art. 3902. Given the narrow, limited nature of the writ, the provisions of Article 3902 set out the exclusive means of relief allowable on an application for a writ of *quo warranto*. *Camillus Specialty Hosp., L.L.C. v. Riccio,* 133 So.3d at 291. However, if it is determined that a person holds office by virtue of a valid election, the inquiry ceases, and the writ should be dismissed. *Schexnayder v. Yolande Schexnayder & Son, Inc.*, 12-885 (La. App. 5 Cir. 5/23/13), 119 So.3d 624. 628.

---

[13] Merriam-Webster dictionary defines the verb "usurp" as "to seize and hold (office, place, functions, powers, etc.) in possession by force or without right; to take or make use of without right; to take the place of by or as if by force."

In this case, Ms. Pitre, by way of her Petition for Quo Warranto, challenged the authority to hold office of all four of the declared winners of the June 2020 Board of Directors election. Although Ms. Pitre made specific and individualized allegations against Mr. Tillson and Mr. Guidry regarding their eligibility to serve on the board due to their alleged lack of regular membership in the LTBA, she made no specific and individualized allegations against Mr. Murrell and Mr. Hernandez regarding their eligibility to serve on the board. Consequently, even if the trial court found merit to the lack of eligibility allegations against Mr. Tillson and Mr. Guidry, that would not have been grounds to deprive Mr. Murrell and Mr. Hernandez of their elected positions on the Board of Directors. Therefore, because the trial court vacated the elections of all four of the declared winners of the June 2020 Board of Directors election, it is apparent that it found merit to Ms. Pitre's allegations as to irregularities as to eligible voters and/or irregularities with the election procedure itself. And because the trial court rendered judgment on Ms. Pitre's Motion for Directed Verdict, it is necessary for us to examine the evidence presented by defendants regarding these allegations to determine whether defendants failed to make a *prima facie* showing on their initial burden of proof such that Ms. Pitre was entitled to judgment without the necessity of presenting any rebuttal evidence.

At the hearing, defendants presented the testimony of Mr. Heitzmann, the executive director and secretary-treasurer of the LTBA. Regarding the June 2020 election at issue, Mr. Heitzmann testified that, in accordance with his usual procedure, he had one of his workers compile the membership list of the voting members, including the lifetime and regular members. On April 2, 2020, he emailed this list to the executive committee to be placed on

the agenda for the April Board of Directors meeting.  The minutes of the

April 2020 Board of Directors meeting contain the following entry:

> **Committee Reports:**
>
> **Membership & Nominating Committee:  Charlotte Clavier – Chairperson**
>
> Charlotte presented to the board the list of voters eligible to cast a vote in the upcoming Board election.  Hearing no objections Charlotte made a motion to approve the list as presented.  This motion was seconded by Neal McFadden, which was voted on and passed unanimously.
>
> Charlotte nominated Danny Guidry, Jim Montgomery, Val Murrell, Michele Rodriguez, Dex Comardelle, and Lynn Thibodeaux Sr. to run for the Board.  Michelle LaVoice seconded the nominations, which passed unanimously.
>
> …
>
> Roger informed the board that a letter will be sent to the members of the association notifying them of the election, stating who has been nominated by the board, and asking for additional nominees.  This letter is scheduled to be mailed on April 17, 2020.
> (Emphasis in original)

Mr. Heitzmann testified that no objection was lodged against any

voter on the list by either a member of the LTBA or any member of the

board until Ms. Pitre filed her Petition for Quo Warranto in January of 2021,

over six months after the election.  He further confirmed that, as reflected in

the introduced minutes, the membership list was unanimously approved by

the Board of Directors at the April 7, 2020 meeting.  This list was then sent

to MK Elections, who sent the ballots to the membership on June 1, 2020.

After the close of the election on June 30, 2020, MK Elections tallied the

results and sent them to Mr. Heitzmann.

These results, which were introduced at the hearing, reflect that 301

ballots were cast, and that the four persons receiving the highest number of

votes were: Val Murrell, David Tillson, Daniel Guidry, and Keith

Hernandez. We find, through the testimony of Mr. Heitzmann regarding the election procedure used, as confirmed by the minutes of the Board of Directors meeting, and the evidence, that these four individuals received the highest number of votes in the election, they made a *prima facie* showing of their authority for holding the positions as members of the Board of Directors of the LTBA. *See English Turn Property Owners Association v. Taranto*, 16-319 (La. App. 4 Cir. 4/19/17), 219 So.3d 381, *writ denied*, 17-1100 (La. 10/16/17), 318 So.3d 702 (appellate court found that the defendants showed the authority for their holding the positions of members of the Board of Directors based on the election results contained in the record showing the number of ballots cast and the individuals receiving the highest number of votes for election to the Board of Directors, stating: "By receiving the highest number of votes and thereby winning the election, defendants have shown the authority for holding their positions of members of the Board of Directors of ETPOA").

We further find that by granting Ms. Pitre's Motion for Directed Verdict, the trial court legally erred by holding the defendants to a higher burden of persuasion than that which is contemplated in a *quo warranto* proceeding. Rather than grant the Motion for Directed Verdict, the trial court should have shifted the burden of proof to Ms. Pitre to prove her allegations regarding allegedly ineligible voters voting in the election and alleged procedural errors that may have been substantial enough to render the entire election invalid.

We acknowledge that in a *quo warranto* proceeding seeking to "oust directors of a corporation, the court may investigate whether or not the votes were legally cast." *Thornton v. Carthon*, 47, 948 (La. App. 2 Cir. 5/15/13), 114 So.3d 554, 560, *writ denied*, 13-1785 (La. 11/1/13), 125 So.3d 435.

However, we find that the burden imposed on the defendants – to basically prove the qualifications of the members who voted in the election – goes beyond what is contemplated in a *quo warranto* action.[14] Because the remainder of the relief granted by the trial court was predicated upon its erroneous granting of Ms. Pitre's Motion for Directed Verdict, we pretermit any discussions of the remainder of Ms. Pitre's allegations regarding the election of officers and adoptions of the amendments to the LTBA bylaws.

**CONCLUSION**

Having found that the trial court legally erred in granting Ms. Pitre's Motion for Directed Verdict regarding the Board of Directors election, and finding the remainder of its judgment to be predicated on vacating the Board of Directors election, we accordingly vacate the entire judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

**JUDGMENT VACATED; REMANDED**

---

[14] If the initial burden were on the defendant in a *quo warranto* proceeding to disprove such allegations, we recognize that could potentially create a near impossible burden for such defendant; for example, in a statewide election for public office, the officially declared winner of such election, faced with a *quo warranto* challenge based upon general allegations of ineligible voters voting in the election, in order to survive a Motion for Directed Verdict, would have to prove that tens of thousands of voters in the election were in fact eligible to vote, rather than the challenger proving that ineligible voters did in fact vote in the election.

LORA PITRE                                          NO. 22-CA-467

VERSUS                                              FIFTH CIRCUIT

LOUISIANA THOROUGHBRED                              COURT OF APPEAL
BREEDERS ASSOCIATION, WARREN
HARANG, III, JAKE DELHOMME,                         STATE OF LOUISIANA
DANIEL GUIDRY, VAL MURRELL,
DAVID TILLSON, AND KEITH
HERNANDEZ


**JOHNSON, J., DISSENTS WITH REASONS**

I, respectfully, dissent from the majority opinion for the following

reasons.

In this matter, Lora Pitre filed a "Petition for *Quo Warranto*,

Declaratory Judgment, Mandamus; and for Preliminary Injunction," wherein

she alleged violations of the bylaws in conducting the June 2020 board

election.  As stated in the majority opinion:

> Ms. Pitre's allegations fall into four basic categories:  1) specific
> and individualized allegations against Mr. Tillson and Mr.
> Guidry regarding their eligibility to serve on the board and as
> officers due to their alleged lack of regular membership in the
> LTBA; 2) general allegations that there were individuals who
> timely applied for membership in the LTBA, but whose
> applications were not taken up for approval and thus were denied
> the ability to vote in the Board of Directors election; 3) general
> allegations that there were individuals who did not comply with
> the approval procedure in the LTBA's bylaws and/or pay their
> dues to the association, but were nevertheless allowed to vote in
> the Board of Directors election; and 4) general allegations that
> the prior Board of Directors and executive director failed to
> comply with all bylaw requirements for conducting the Board of
> Directors election.  In her petition, Ms. Pitre requested that the
> court order defendants to appear and show by what authority
> each defendant claimed to hold office in the LTBA.  She also
> requested a declaratory judgment vacating the board election, the
> election of officers, and the adoption of amendments to the foal
> accreditation provisions of the bylaws, mandamus relief ordering
> the board to conduct a new election under the supervision of a
> court-appointed arbitration panel, injunctive relief, and
> attorney's fees and costs.

(Internal footnote omitted).

22-CA-467                        1

The judgment at issue grants Ms. Pitre's petition *in toto*. The trial court found that the Board Election and the Election of Officers were null *ab initio*, and any and all actions of that Board subsequent to the nullified election were null. Although the judgment grants the *quo warranto* as a cause of action in Ms. Pitre's petition, it does not render any findings that the Board members claiming the office were without authority or forbid them to do so, which is required by La. C.C.P. art. 3902. Thus, the majority opinion appropriately concludes, "Therefore, because the trial court vacated the elections of all four of the declared winners of the June 2020 Board of Directors elections, it is apparent that it found merit to Ms. Pitre's allegations as to irregularities as to eligible voters and/or irregularities with the election procedure itself."

In *quo warranto* proceedings to oust directors of a corporation, the court may investigate whether or not the votes were legally cast. *Thornton v. Carthon*, 47,948 (La. App. 2 Cir. 5/15/13), 114 So.3d 554, 560. At trial, the judge made it clear to the parties that she was considering the validity of the list of eligible voters. While the burden to prove the qualifications each member who voted in the election may be improper to place on a defendant for a *quo warranto* inquiry, it was proper to require Defendants to prove they had followed the procedures of their election process. I find that Defendants failed to meet their burden of proving that Louisiana Thoroughbred Breeders Association ("LTBA") even considered the qualifications of the members who voted in the Board election.

Part B, Section 16 of LTBA's bylaws states, "Committees. Any committee, including the Executive Committee, shall keep minutes and records and shall report its activities at each regular meeting of the Board of Directors and at such other times as required by the board." According to

22-CA-467                                          2

the minutes of the April 7, 2020 LTBA Board of Directors' Meeting, Charlotte Clavier, the Membership & Nominating Committee's Chairperson, presented the Board with the list of voters eligible to cast a vote in the upcoming Board election. There were no objections to the list, and it passed unanimously. Considering the fact that Ms. Pitre made general allegations that there were individuals who timely applied for membership in the LTBA but their applications were not taken up for approval and, thus, were denied the ability to vote in the Board of Directors election, Defendants should have presented evidence of LTBA's process of determining the eligible voters— an issue that was squarely presented to them in Ms. Pitre's petition. Defendants failed to present the minutes from the Membership & Nominating Committee's meeting that ultimately compiled the list of eligible voters, which means Defendants failed to prove that the votes in the Board election were legally cast. *See*, *Thornton*, *supra*.

Therefore, I am of the opinion that Defendants failed to meet their *quo warranto* burden of proving the authority by which the Board claimed to hold office. As a result, I would affirm the portion of the trial court's judgment that granted Ms. Pitre's petition for *quo warranto* and nullified the Board Election, Election of Officers, and subsequent actions of the Board of Directors.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 15, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-467

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
A. GEORGE GRIMSAL (APPELLEE)          MICAH C. ZENO (APPELLEE)          ALEXANDRE E. BONIN (APPELLANT)
BEVERLY A. DELAUNE (APPELLANT)        JEAN-MARC BONIN (APPELLANT)       JOHN L. DUVIEILH (APPELLANT)
JOSEPH L. MCREYNOLDS (APPELLANT)      JUDY L. BURNTHORN (APPELLANT)     R. CHRISTIAN BONIN (APPELLANT)

### MAILED

MARK P. ALLAIN, JR. (APPELLANT)       BRYAN M. DUPREE (APPELLEE)        CHRISTOPHER H. CORKERN(APPELLANT)
ATTORNEY AT LAW                        ATTORNEY AT LAW                   ATTORNEY AT LAW
1100 POYDRAS STREET                    400 EAST KALISTE SALOOM ROAD      400 POYDRAS STREET
SUITE 3700                             SUITE 4200                        SUITE 2500
NEW ORLEANS, LA 70163                  LAFAYETTE, LA 70508               NEW ORLEANS, LA 70130

PAUL A. BONIN (APPELLANT)             ROBERT J. KENNEDY, JR. (OTHER)
ATTORNEY AT LAW                        ATTORNEY AT LAW
4224 CANAL STREET                      POST OFFICE BOX 22260
NEW ORLEANS, LA 70119                  SHREVEPORT, LA 71120